UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:22 CR 642 JAR (JMB) |
| | ) | |
| ERIC GATEN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**[1]

Currently before the Court is Defendant Eric Gaten's Motion to Dismiss.  [ECF Nos. 87, 89][2]  The government opposes Gaten's motion.  [ECF No. 95]

**BACKGROUND**

Gaten is charged by Superseding Indictment with three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  On January 4, 2024, Gaten timely filed the instant Motion to Dismiss the Superseding Indictment.  On January 12, 2024, the government filed its response in opposition.

The undersigned concludes that the pending motion presents a purely legal question that can be resolved on the existing record—no testimony is required.  Based on the parties' written submissions, and in view of the relevant case law of the United States Court of Appeals for the

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

[2] Documents 87 and 89 are identical motions in substance; Document 89 corrects a typographical error.

Eighth Circuit, the undersigned makes the following conclusions of law and recommendation.

## DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATION

### I.     Summary of Arguments

Gaten is charged with violating 18 U.S.C. § 922(g)(1). In his Motion to Dismiss, Gaten represents that he has two prior convictions for controlled substance offenses. Gaten contends that, following the Supreme Court's decisions in District of Columbia v. Heller, 554 U.S. 570 (2008) and New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), § 922(g) infringes his Second Amendment right to keep and bear arms. According to Gaten, § 922(g)(1) is unconstitutional when applied to non-dangerous felons because such application is inconsistent with our nation's history and tradition of firearm regulations.

The government counters that § 922(g)(1) is consistent with history and tradition. The government also notes that the Eighth Circuit has already rejected arguments identical to Gaten's challenge herein.

### II.    Discussion

#### A.    *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*

Gaten's motion rests on the Supreme Court's recent decision construing the Second Amendment. See New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022).

Bruen involved a challenge to a New York gun licensing law that required law abiding citizens to satisfy a "proper cause" standard before they could obtain a license to carry a handgun in public. The proper cause standard required applicants to show a special need beyond that of the general community. The Supreme Court held that the Second Amendment protected a person's right to carry a handgun for self-defense and, therefore, found New York's proper cause standard unconstitutional. In so doing, the Court rejected the two-step, means-ends analytical framework

2

for addressing Second Amendment challenges that had developed in several circuits following its earlier decisions in District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. Chicago, 561 U.S. 742 (2010). See Bruen, 142 S. Ct. at 2125-26.[3] According to the Court,

> [d]espite the popularity of this two-step approach, it is one step too many. Step one … is broadly consistent with Heller …. But Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outerbounds of the right to keep and bear arms.

Id. at 2127. The majority in Bruen used the following standard, not means-ends scrutiny— for addressing Second Amendment challenges:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 2129-30 (citation omitted). "The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." Id. at 2131 (quoting Heller, 554 U.S. at 635 (emphasis in Bruen)).

The Court recognized the difficulty that applying this standard might entail, stating "[t]o be sure, '[h]istorical analysis can be difficult; it sometimes requires resolving threshold questions, and making nuanced judgments about which evidence to consult and how to interpret it.'" Id. at 2130 (quoting McDonald, 561 U.S. at 803-04 (Scalia, J., concurring)). The Court also recognized that some cases would be rather "straightforward" and address "a general societal problem that has

---

[3] After Heller and McDonald, a majority of the Courts of Appeals "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." Bruen, 142 S. Ct. at 2125.

3

persisted since the 18th century," see id. at 2131, while other cases might involve more modern "regulatory challenges" that were not "the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." See id. at 2132.  Thus, "[a]lthough its meaning is fixed according to those who ratified it, the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." Id. (citing United States v. Jones, 565 U.S. 400, 404-05 (2012)).  "Just as the First Amendment protects forms of communications not available at the founding, so too must the Second Amendment be interpreted to protect "modern instruments that facilitate armed self-defense." Id. (citation omitted).  Therefore, when considering challenges to "present-day firearms regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy." Id.  "[D]etermining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are relatively similar." Id. (citation omitted).  The Court identified two broad metrics for assessing "the features that render regulations relatively similar under the Second Amendment," namely "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 2132-33.  "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." Id. at 2133 (cleaned up; emphasis in Bruen).  The Court cautioned, however, that analogical reasoning should not be undertaken too narrowly or too broadly, providing that –

> On the one hand, courts should not "uphold every modern law that remotely resembles a historical analogue," because doing so "risk[s] endorsing outliers that our ancestors would never have accepted." Drummond v. Robinson, 9 F.4th 217, 226 (3d Cir. 2021).  On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin.  So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

4

Id. at 2133.

After considering potentially relevant historical practices, the Court explained that the Second Amendment is on a par with other fundamental, constitutional rights, restating that "[t]he constitutional right to bear arms in public for self-defense is not a 'second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" Id. at 2156 (quoting McDonald, 561 U.S. at 780). The Court held, therefore, that New York's proper cause requirement is unconstitutional "in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." Id.

### B. Eighth Circuit Precedent

Although Bruen introduced fresh complexity or uncertainty into the analysis required for addressing Second Amendment challenges to firearms regulations, Gaten's Motion to Dismiss is easily addressed because his argument is foreclosed by Eighth Circuit precedent.

In United States v. Jackson, 69 F.4th 495, 505-06 (8th Cir.), reh'g en banc denied, 85 F.4th 468 (8th Cir. 2023), the Eighth Circuit considered and rejected the same argument Gaten raises herein. The defendant in Jackson argued that "§ 922(g)(1) [was] unconstitutional as applied to him, because his drug convictions were 'non-violent' and [did] not show that he [was] more dangerous than the typical law-abiding citizen." Id. at 501. In rejecting that argument, the Eighth Circuit applied the standard dictated by Heller and Bruen and considered the history of firearm restrictions in the United States. The Eighth Circuit specifically considered whether "status-based restrictions to disqualify categories of persons from possessing firearms" were limited to only "persons who presented an unacceptable risk of dangerousness," or also covered "persons who deviated from legal norms." Id. at 505. The Court held that "Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons." Id.

5

at 505-06 (also relying on "the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons").  Thus, after Jackson, in the Eighth Circuit "there is no need for felony-by-felony determinations regarding the constitutionality of § 922(g)(1) as applied to a particular defendant." United States v. Cunningham, 70 F.4th 502, 506 (8th Cir. 2023), reh'g en banc denied, No. 22-1080 (8th Cir. Aug. 30, 2023) (citing Jackson, 69 F.4th at 501-02); see also United States v. Dunn, 76 F.4th 1062, 1068 (8th Cir. 2023) (citing Jackson, 69 F.4th at 501-02).

In summary, even though "the law in this area is still in flux," in the Eighth Circuit, the clear and unambiguous decisions in Jackson, Cunningham, and Dunn "spell the end for [Gaten's] constitutional challenge."  United States v. Doss, 2023 WL 8299064 at *1 (8th Cir. Dec. 1, 2023) (per curiam).  Gaten's constitutional challenge cannot be sustained.  The undersigned respectfully recommends that our Court deny Gaten's Motion to Dismiss the Superseding Indictment in this matter.

## RECOMMENDATION

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Court DENY Gaten's Motion to Dismiss [ECF Nos. 87, 89].

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek review of the  Recommendation herein before a United States District Judge.  The parties are advised that they have fourteen (14) days in which to file written objections to the foregoing Report and Recommendation unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).  See also 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

This matter will be set for trial by further order of the court, before the Honorable John A. Ross, Senior United States District Judge.

JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  19  day of  January , 2024.

7